# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROXANE LABORATORIES, INC., | |
| Plaintiff, | Civil Action No. 14-4042 (SRC) |
| v. | |
| CAMBER PHARMACEUTICALS INC. et al., | **OPINION & ORDER** |
| Defendants. | |

**CHESLER, U.S.D.J.**

This matter comes before the Court on the motion by Defendants Camber Pharmacuticals, Inc. and Invagen Pharmaceuticals, Inc. (collectively, "Defendants") to declare this an exceptional case, pursuant to 35 U.S.C. § 285 and for attorneys' fees. For the reasons that follow, the motion will be granted.

This case arises from a patent infringement dispute involving a pharmaceutical, calcium acetate capsules. Plaintiff Roxane Laboratories, Inc. ("Roxane") owns U.S. Patent No. 8,563,032 (the "'032 patent"), directed to a pharmaceutical calcium acetate formulation; Roxane markets a generic calcium acetate capsule product. Defendants are pharmaceutical manufacturers who market competing generic calcium acetate capsule products. To make a long story short, Roxane brought this suit for patent infringement against Defendants and lost. Defendants now move, pursuant to 35 U.S.C. § 285, for a declaration that this is an exceptional case and for an award of their attorneys' fees and costs spent in defending this action.

The governing statute for attorney's fees in a patent case states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.

The Supreme Court has defined an "exceptional" case as "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. Icon Health & Fitness, 134 S. Ct. 1749, 1756 (2014). "[A] district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." Id. at 1757.

"District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." Id. at 1756; see also Highmark Inc. v. Allcare Health Mgmt. Sys., Inc., 134 S. Ct. 1744, 1748 (2014) ("[T]he determination of whether a case is 'exceptional' under § 285 is a matter of discretion."). In examining the totality of the circumstances under § 285's fee-shifting framework, courts may consider the following nonexclusive list of factors: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Octane Fitness, 134 S. Ct. at 1756 n.6 (citation omitted).

"After determining that a case is exceptional, the district court must determine whether attorney fees are appropriate," a decision that is within the discretion of the district court. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1460 (Fed. Cir. 1998) (citations omitted). The party seeking an award of attorney's fees must show their entitlement by a preponderance of the evidence standard. Octane Fitness, 134 S. Ct. at 1758.

Defendants contend that Plaintiff's infringement claim was objectively unreasonable and

that Roxane pursued the litigation in a manifestly unreasonable manner. Because this Court finds that the case is exceptional based on the objective unreasonableness of Roxane's patent infringement claim, it need not reach Defendants' arguments about Roxane's conduct of the litigation.

As evidence of objective unreasonableness, Defendants point to a number of statements and decisions made by this Court and by the Federal Circuit over the course of the litigation. Defendants first point to the statement made by this Court in its Opinion denying Roxane's motion for a preliminary injunction:

> In brief, the key obstacle for Roxane is found in the undisputed facts that claim 1 of the '032 patent requires a "capsule that is size 00 or less," while the accused infringing products are capsules that are size "00el."

(Opinion and Order of August 6, 2014 at 3-4.) Because capsule sizes are standardized in the pharmaceutical industry, and because size 00el capsules are larger than size 00 capsules, Defendants argue that these undisputed basic facts mandate the conclusion that Roxane had no objectively reasonable factual or legal basis for its patent infringement suit.

Roxane appealed this Court's preliminary injunction decision to the Federal Circuit, which, on March 12, 2015, affirmed the decision without opinion. Roxane Labs., Inc. v. Camber Pharms., Inc., 596 Fed. Appx. 922 (Fed. Cir. 2015). Defendants argue that the Federal Circuit's decision should have ended Roxane's pursuit of the case, but it did not do so. The litigation proceeded to claim construction.

Defendants next point a statement this Court made in its claim construction decision. After reviewing the undisputed basic facts noted above, and observing that the evidence of record showed that the pharmaceutical industry has clear standard capsule sizes, the Court

3

stated: "Roxane has made a concerted effort to inject confusion into this fairly simple and straightforward matter." (Opinion and Order of July 15, 2015 at 4.) Defendants contend that this clearly let Roxane know that it had made no progress toward demonstrating a factual or legal basis for its patent infringement claim.

Roxane's principle argument for patent infringement was that the claim term "size 00" meant a "family" of capsule sizes, which included the size "00el" capsules used by Defendants. This Court first expressed its skepticism about the reasonableness of this position in a footnote in the preliminary injunction decision: "At the outset, the Court wonders about the use of the 'family' metaphor here. Are there really capsule size families that make up the capsule size community?" (Opinion and Order of August 6, 2014 at 4 n.1.) At that point, the record did not contain any evidence which supported the theory that either the pharmaceutical industry or the inventors employed a concept of capsule size families. Then, in the claim construction decision, this Court carefully examined the intrinsic evidence and found no support for the capsule size family theory. On appeal, the Federal Circuit scrutinized this Court's claim construction analysis and agreed with it. Roxane Labs., Inc. v. Camber Pharms. Inc., 666 Fed. Appx. 899, *16 (Fed. Cir. Nov. 17, 2016).

Defendants contend that this evidence demonstrates that Roxane had no objectively reasonable basis to support its claim of patent infringement.

In opposition, Roxane relies on three points: 1) Roxane's claim construction position had merit; 2) this Court's denial of summary judgment pending claim construction shows that Roxane's position was not objectively unreasonable; and 3) Roxane's offer to stipulate to non-infringement after claim construction demonstrates good faith.

As to the merit of its claim construction position, Roxane states:

> As an initial matter, Roxane's claim construction positions had merit. Roxane's fundamental position was that capsule size is a technical term of art, whose ordinary meaning encompasses elongated and non-elongated versions. Roxane anchored its proposed construction in the intrinsic evidence, and explained why it did not show an intent by the patentees to use a different meaning, let alone the requisite clear and unmistakable intent that the law requires. As additional evidence of the ordinary meaning, Roxane relied on extensive extrinsic evidence, whose implications Defendants and their experts disputed. Roxane continually developed the evidence and ultimately submitted a final claim construction proposal to the Court.

(Pl.'s Br. 2.) This is not an accurate account of the litigation. It is correct that Roxane's fundamental claim construction position was that the ordinary meaning of "size 00" was "the capsule size family consisting of size 00 and size 00el." (See Pl.'s PI Br. 12 ("Such a capsule is by its own designation part of the size "00" family, and is therefore a pharmaceutically acceptable capsule that is size 00 or less.")). Roxane anchored its proposed construction in the extrinsic evidence, not the intrinsic evidence.[1] While it did address the intrinsic evidence in its PI reply brief, its arguments were meritless. While Roxane may have developed the record after the preliminary injunction hearing by finding the PTAB hearing transcript, Roxane never developed any stronger or better arguments based on the intrinsic evidence.

Conspicuously absent from Roxane's opposition to this motion is any example of a claim construction argument based on the intrinsic evidence that had arguable merit. Roxane now asserts that its position had merit, but provides no support for that. Roxane has not, at any point in this litigation, made a colorable argument that the intrinsic evidence supports its theory that

---

[1] The attempted historical revision is significant, since this Court concludes that one of the main reasons that Roxane's infringement claim is objectively unreasonable is that it was *not* anchored in the intrinsic evidence.

5

the ordinary meaning of "size 00" is "the capsule size family consisting of size 00 and size 00el." As will be discussed further below, the pursuit of a patent infringement claim based on such a weak position is extraordinary.

Roxane next argues that this Court's denial of summary judgment pending claim construction shows that Roxane's position was not objectively unreasonable. The facts about the denial of summary judgment are as follows. On October 24, 2014, Defendants moved for partial summary judgment of non-infringement. Fundamental to Defendants' motion was the argument that district courts have considerable discretion as to the procedure for claim construction, and the request that this Court construe the "size 00" claim term in deciding the motion for partial summary judgment. (Defs.' Br. 11, Docket Entry No. 137.) Roxane then wrote a letter in which it argued that the motion was premature, as it was premised on the completion of "formal claim construction proceedings." (Docket Entry No. 139.) Defendants wrote a letter stating their disagreement. This Court then issued a one-paragraph Order, denying the motion as premature and stating that Defendants could resubmit it after claim construction.

Roxane now wishes to characterize this decision as some evidence of this Court's view of the merits of the infringement claim. The record does not support this view. Defendants filed a motion which asked the Court to perform claim construction on summary judgment, which is not this Court's typical practice. The Court declined to do so and held, in essence, that it would follow its typical claim construction practice. This was a very minor decision about claim construction procedure and the single paragraph in the Order contains no statements or even hints about this Court's view of the merits of the case. There is no evidence here that this Court made any statements or decisions about the merits of Roxane's infringement case. All that

6

happened, in the end, is that this Court told the parties that it would stick to its customary claim construction procedure.

These are the facts of record. Roxane, however, now argues that it "reasonably relied on the Court's Order." (Pl.'s Opp. Br. 12.) Roxane then quotes from the Federal Circuit's decision in <u>Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH</u>, 603 F.3d 943, 954 (Fed. Cir. 2010): "Absent misrepresentation to the court, a party is entitled to rely on a court's denial of summary judgment . . . as an indication that the party's claims [are] objectively reasonable." Now let us consider these words in their original context. In <u>Medtronic</u>, the Federal Circuit reviewed a district court's exceptional case decision and found it clearly erroneous. <u>Id.</u> at 953. The Federal Circuit stated:

> We first address the district court's ruling that Medtronic acted improperly in failing to abandon its claims following the district court's claim construction order. The salient inquiry is whether Medtronic's claims were so lacking in merit that Medtronic was legally obligated either to abandon its case altogether or to limit itself to challenging the district court's claim construction order on appeal. If Medtronic's infringement claims were not frivolous or objectively unreasonable, Medtronic was entitled to pursue those claims, and its ultimate lack of success does not render the case exceptional.
>
> We have held that there is a presumption that an assertion of infringement of a duly granted patent is made in good faith. Clear and convincing evidence is required to overcome that presumption and show that the patentee's infringement claims were vexatious, unjustified, or frivolous, and were pursued in bad faith.
>
> The district court's characterization of Medtronic's claims as frivolous is undermined by the fact that the court denied BrainLAB's motions for summary judgment and denied each of its motions for JMOL filed during the trial. Absent misrepresentation to the court, a party is entitled to rely on a court's denial of summary judgment and JMOL, as well as the jury's favorable verdict, as an indication that the party's claims were objectively reasonable and suitable for resolution at trial.
>
> Of course, if the party's success at the summary judgment stage is due to false or misleading representations about its evidence, the party cannot rely on the district

> court's denial of summary judgment to shield it from liability for sanctions. However, the district court did not point to any misrepresentations made by Medtronic and its counsel at the summary judgment stage, and in our review of the record we have found none.

Id. at 953-54 (citations omitted). Roxane tailored its quote to make it look like the Federal Circuit held that a party is entitled to rely on a denial of summary judgment as an indication that the party's claims are objectively reasonable, but that is neither what the Federal Circuit found nor what it said. Rather, the Federal Circuit explained its view clearly in the sentence just before the beginning of Roxane's quote: "The district court's characterization of Medtronic's claims as frivolous is undermined by the fact that the court denied BrainLAB's motions for summary judgment and denied each of its motions for JMOL filed during the trial." Id. at 954. This Court understands Medtronic to stand for the eminently sensible proposition that a district judge who denied summary judgment motions, allowed the case to proceed to trial,[2] and twice denied the defendant's JMOL motions during trial, is on very thin ice when he then finds that Plaintiff's case was objectively frivolous.

The circumstances of the present litigation are entirely different. Here, this Court ruled that Plaintiff did not show a likelihood of success on the merits at the preliminary injunction phase, and made a procedural ruling that a partial summary judgment motion predicated on the outcome of claim construction should wait until after claim construction. Roxane has pointed to no action on the part of this Court that resembles the circumstances of Medtronic. This Court rejects entirely Roxane's suggestion that this Court in some way signaled to Roxane that it had brought an objectively reasonable infringement claim, and Roxane has no basis to argue that it

---

[2] Roxane also cites ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 875 (Fed. Cir. 2010), another case in which the district court allowed the litigation to proceed to trial.

reasonably relied on this Court's encouraging actions. Had this Court denied the motion for partial summary judgment for a reason that could be taken to mean that there was possible merit to Roxane's infringement claim, Roxane might have a point now – but that is not what occurred.

Roxane next points to its offer to stipulate to non-infringement promptly after this Court filed its adverse claim construction decision, arguing that this "demonstrates good faith." (Pl.'s Br. 13.) Setting aside the question of whether this does, in fact, show good faith, this Court does not perceive the relevance of this point to the question of the objective reasonableness of Roxane's claim for patent infringement.[3] The objective reasonableness inquiry is not about whether a litigant manifested good or bad faith; it is, instead, about the substantive strength of the litigating position. After this Court decided the claim construction issues, it was clear to Roxane that it would not prevail on patent infringement in this Court, and it moved to litigation in the Court of Appeals. This does not speak to the issue of the objective reasonableness of the patent infringement claim.

Roxane's last point is that the fact that Roxane's failure to prevail on the infringement claim does not a provide a basis for declaring this case exceptional. This Court agrees fully, and does not base its determination that this is an exceptional case on the fact that Roxane did not prevail on infringement. Rather, this Court arrives at its determination that this is an exceptional case, pursuant to 35 U.S.C. § 285, on the ground that it is "one that stands out from others with respect to the substantive strength of [Roxane's] litigating position (considering both the governing law and the facts of the case)." Octane Fitness, 134 S. Ct. at 1756.

---

[3] In Octane Fitness, the Supreme Court rejected the Federal Circuit's approach to the exceptional case determination, specifically objecting to, *inter alia*, the Federal Circuit's use of "subjective bad faith" as a factor. 134 S. Ct. at 1757.

As a point of comparison, Roxane points to this Court's decision in <u>Tyco Healthcare Grp. LP v. Mut. Pharm. Co.</u>, 2016 U.S. Dist. LEXIS 95789 (D.N.J. July 22, 2016), a pharmaceutical case that Roxane characterizes as "based on circumstances and allegations more egregious than what Defendants allege here," in which this Court declined to find an exceptional case. (Pl.'s Br. 15.) This Court does not believe that the comparison helps Roxane.

<u>Tyco</u> is an unusual case in that we now have the benefit of the Federal Circuit's guidance about whether Tyco's infringement claim was "objectively baseless," in the context of the sham-litigation exception to <u>Noerr-Pennington</u> immunity. <u>Tyco Healthcare Group LP v. Mut. Pharm. Co.</u>, 762 F.3d 1338, 1343 (Fed. Cir. 2014). To resolve this question, the Federal Circuit first examined and ruled on a question of Federal Circuit law, and then turned to a material factual dispute that involved a battle of experts in pharmaceutical chemistry.[4] <u>Id.</u> at 1344-45. The Federal Circuit found that further inquiry into this factual dispute was needed, and remanded the case. <u>Id.</u> at 1345.

To further the comparison, we also have the benefit of the Federal Circuit's guidance in the instant litigation. In this case, the Federal Circuit affirmed this Court's claim construction decision, with the summary statement that "the intrinsic record unambiguously and fully resolves the proper construction of 'size 00 or less.'" <u>Roxane Labs., Inc. v. Camber Pharms. Inc.</u>, 666 Fed. Appx. 899, *16 (Fed. Cir. Nov. 17, 2016). Moreover, the Federal Circuit disagreed with

---

[4] Curiously, Roxane argues that the instant case, like <u>Tyco</u>, involved a battle of the experts. The cases differ markedly on this point. In <u>Tyco</u>, the Federal Circuit reviewed the battle of the experts as a material issue and remanded the case for further inquiry into it. 762 F.3d at 1345. In the instant case, the Federal Circuit affirmed this Court's refusal to consider the expert opinions and stated: "we agree with the district court that resort to extrinsic evidence is unnecessary and improper." 666 Fed. Appx. at *16. This is like the difference between night and day.

Roxane's position on every stated argument. Id. at *7-*16.

It is in this context that this Court consider's Roxane's comparison of the instant case to Tyco. In Tyco, the Federal Circuit's decision reversing this Court's decision made clear that Plaintiff's infringement case had real legal and factual disputes to resolve. In the instant case, the Federal Circuit's decision affirming this Court's decision expressly stated that the intrinsic evidence was "unambiguous." The Federal Circuit did not cite any evidence or argument that, in its view, supported Roxane's claim construction position.

Thus, this Court does not see how the comparison with Tyco helps Roxane persuade that this is not an exceptional case. Looking simply at the Federal Circuit decisions in the two cases, the plaintiff in Tyco appeared to have a much more substantial infringement case than did Roxane. "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." Octane Fitness, 134 S. Ct. at 1757. This Court finds that, in the instant case, Roxane pursued an exceptionally meritless infringement claim.

The exceptionally meritless nature of Roxane's infringement claim is highlighted by the absence of anything in Roxane's opposition brief that supports the view that the claim had merit. Roxane makes the summary statement that "Roxane's capsule size construction was grounded in the intrinsic and extrinsic evidence," but the brief does not support that assertion. The brief points to nothing in the intrinsic evidence that even colorably supported its claim construction position. The only support for its position that the brief mentions is in the expert opinions it offered in support and, in the context of the Federal Circuit's well-settled views on the use of extrinsic evidence in claim construction, this is too slender a reed to carry such weight. Indeed,

11

the Federal Circuit itself characterized consideration of that expert opinion as "unnecessary and improper."[5] 666 Fed. Appx. at *16.

Having failed to point to anything in the intrinsic evidence that shows some merit to its claim construction position, Roxane points to extrinsic evidence. But Federal Circuit law holds that, absent some ambiguity in the intrinsic record, extrinsic evidence may not be used. Thus, for Roxane's expert declarations to be evidence of merit for its claim construction position, Roxane would need to establish the predicate of some ambiguity in the intrinsic evidence, which it has not done. This Court finds that Roxane's expert opinions on claim construction do not indicate that their infringement case had colorable merit.

Roxane's opposition brief says little about the infringement case it presented here, which relied substantially on its proposed "size family" claim construction. Roxane first presented this theory in its application for a preliminary injunction. The opening brief did not say much about this theory, except to assert that the accused infringing capsule was an "elongated size 00" capsule, and that "[s]uch a capsule is by its own designation part of the size '00' family, and is therefore *a pharmaceutically acceptable capsule* that is *size 00 or less*. (Pl.'s PI Br. 12.) Defendants, in opposition, raised the defense that "size 00 or less" means "exactly size 00 or less." In its reply brief, Roxane presented its claim construction case for the first time. As this Court noted in its decision on the application, Roxane began its claim construction argument with an analysis of extrinsic evidence, which is the wrong place to start, under Federal Circuit

---

[5] Not only does Federal Circuit law clearly disfavor the use of expert opinion in claim construction, but, in certain circumstances, its use may be barred: "Extrinsic evidence may not be used to contradict claim meaning that is unambiguous in light of the intrinsic evidence." Wi-LAN, Inc. v. Apple Inc., 811 F.3d 455, 462 (Fed. Cir. 2016).

law.  Roxane Labs., Inc. v. Camber Pharms., Inc., 2014 U.S. Dist. LEXIS 108060, *7 (D.N.J. Aug. 6, 2014) (the "PI Opinion").  Roxane then made its arguments about the intrinsic evidence.  As this Court noted, those arguments were "unpersuasive."  Id.  That characterization was charitable; they were meritless.

In the PI Opinion, this Court examined the prosecution history of the patent at issue and stated the following:

> There are two main points to be made from the prosecution history. The first concerns the meaning of the phrase term "size 00." The applicants submitted quite a few documents which discussed size 00 capsules and their fill capacity. Not once did this Court find any suggestion that the applicants understood "size 00" to refer to a family of sizes, or even two sizes.  Throughout the prosecution history, the applicants' submissions consistently treat size 00 capsules — whether singular or plural — as capsules of one size only.  The applicants' main point was that the Nakai process does not produce granules which will fill a size 00 capsule with 667 mg of calcium acetate. The Uraizee declaration does not suggest that various size 00 capsules have differing fill capacities.
>
> The second point concerns the surrender of subject matter during prosecution. On this record, it appears to this Court that the applicants filed a narrowing amendment to overcome an obviousness rejection. The applicants amended claim 1 to limit it to capsules that are size 00 or smaller to distinguish Nakai, arguing that the Nakai process cannot produce such capsules.  The PTAB was persuaded, reversed the rejection, and the '032 patent issued.  Because this Court is not persuaded that the applicants understood "size 00" to refer to a family of sizes which includes capsule size 00el, this Court finds that the applicants surrendered coverage of any capsule larger than size 00. The principle of prosecution history estoppel bars the applicants from recapturing this subject matter through the doctrine of equivalents.

Id. at *17-*19.  While this was clearly a preliminary ruling made at the beginning of a case, it let Roxane know that, in the Court's view, their "size family" theory had substantial problems.

The litigation proceeded to claim construction, where Roxane relied primarily on the argument that this Court should first look to the extrinsic evidence.  In its opening Markman brief, Roxane wrote:

13

> Further, where—as here—the disputed term is a technical term of art, the Supreme Court recently instructed in *Teva Pharmaceuticals, USA Inc. v. Sandoz, Inc.* that "the district court **will need** to look beyond the patent's intrinsic evidence and to consult the extrinsic evidence" to ascertain the technical term's ordinary meaning to a POSITA. 135 S. Ct. 831, 841 (2015).

(Pl.'s Markman Br. 2.) Roxane quoted Teva out of context. Let us consider what Teva actually says:

> Now that we have set forth why the Federal Circuit must apply clear error review when reviewing subsidiary factfinding in patent claim construction, it is necessary to explain how the rule must be applied in that context. We recognize that a district court's construction of a patent claim, like a district court's interpretation of a written instrument, often requires the judge only to examine and to construe the document's words without requiring the judge to resolve any underlying factual disputes. As all parties agree, when the district court reviews only evidence intrinsic to the patent (the patent claims and specifications, along with the patent's prosecution history), the judge's determination will amount solely to a determination of law, and the Court of Appeals will review that construction *de novo*.
>
> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period. *See, e.g., Seymour v. Osborne*, 78 U.S. 516, 11 Wall. 516, 546, 20 L. Ed. 33 (1871) (a patent may be "so interspersed with technical terms and terms of art that the testimony of scientific witnesses is indispensable to a correct understanding of its meaning"). In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the "evidentiary underpinnings" of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal.
>
> For example, if a district court resolves a dispute between experts and makes a factual finding that, in general, a certain term of art had a particular meaning to a person of ordinary skill in the art at the time of the invention, the district court must then conduct a legal analysis: whether a skilled artisan would ascribe that same meaning to that term in the context of the specific patent claim under review. That is because "[e]xperts may be examined to explain terms of art, and the state of the art, at any given time," but they cannot be used to prove "the proper or legal construction of any instrument of writing." *Winans v. New York & Erie R. Co.*, 62 U.S. 88, 21 How. 88, 100-101, 16 L. Ed. 68 (1859); *see also Markman, supra*, at 388, 116 S. Ct. 1384, 134 L. Ed. 2d 577 ("'Where technical

terms are used, or where the qualities of substances . . . or any similar data
necessary to the comprehension of the language of the patent are unknown to the
judge, the testimony of witnesses may be received upon these subjects, and any
other means of information be employed. *But in the actual interpretation of the
patent the court proceeds upon its own responsibility, as an arbiter of the law,
giving to the patent its true and final character and force*'" (quoting 2 W.
Robinson, Law of Patents §732, pp. 482-483 (1890); emphasis in original)).

Teva Pharms. USA, Inc. v. Sandoz, Inc., 135 S. Ct. 831, 840-41 (2015). Roxane's use of its quote from Teva was misleading. In its brief, Roxane contended that Teva held that "where . . . the disputed term is a technical term of art . . . the district court **will need** to look beyond the patent's intrinsic evidence and to consult the extrinsic evidence." (Pl.'s Markman Br. 2.) As revealed in the section of Teva just presented, Teva does not stand for that proposition. To the contrary, Teva states clearly the more fundamental principle that experts cannot be used to prove the proper or legal construction of any instrument of writing. Id. at 841.

The point of this is that Roxane's claim construction case was not supported by patent law, and was contrary to basic patent law, at that. For anyone practicing patent law, this is not an esoteric point. The foundation of the contemporary Federal Circuit law of claim construction and the use of extrinsic evidence is Phillips:

> In some cases, the ordinary meaning of claim language as understood by a person
> of skill in the art may be readily apparent even to lay judges, and claim
> construction in such cases involves little more than the application of the widely
> accepted meaning of commonly understood words. In such circumstances, general
> purpose dictionaries may be helpful. In many cases that give rise to litigation,
> however, determining the ordinary and customary meaning of the claim requires
> examination of terms that have a particular meaning in a field of art. Because the
> meaning of a claim term as understood by persons of skill in the art is often not
> immediately apparent, and because patentees frequently use terms
> idiosyncratically, the court looks to those sources available to the public that
> show what a person of skill in the art would have understood disputed claim
> language to mean. Those sources include the words of the claims themselves, the
> remainder of the specification, the prosecution history, and extrinsic evidence
> concerning relevant scientific principles, the meaning of technical terms, and the

15

state of the art.

Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005) (citations omitted). In Phillips, the Federal Circuit also explained at length why it came to this conclusion, but this is the gist of it: "We have viewed extrinsic evidence in general as less reliable than the patent and its prosecution history in determining how to read claim terms." Id. at 1318.

Roxane's claim construction case thus rested on a proposition that conflicts with Phillips and Teva, that this Court *must* rely on the extrinsic evidence to find out the ordinary meaning of the claim term "size 00" to one of ordinary skill in the art. As an assertion of patent law, this is very close to meritless. Because Roxane distorted Teva and ignored Phillips, the legal basis for its claim construction position was objectively unreasonable. This is one of several reasons why this Court finds this to be an exceptional case: the legal theory is not supported by the basic tenets of current patent law. As Defendants have noted, when issuing its claim construction decision, which rejected the "size family" construction, this Court stated: "Roxane has made a concerted effort to inject confusion into this fairly simple and straightforward matter." Roxane Labs., Inc. v. Camber Pharms. Inc., 2015 U.S. Dist. LEXIS 92248, *5 (D.N.J. July 15, 2015).

While Octane Fitness changed the legal standard for finding an exceptional case under § 285, there are some pre-Octane cases that are useful points of reference, cases in which the Federal Circuit affirmed a decision that an infringement claim was objectively baseless: MarcTec, LLC v. Johnson & Johnson, 664 F.3d 907, 919 (Fed. Cir. 2012) ("Because the specification and prosecution history clearly refute MarcTec's proposed claim construction, the district court did not err in finding that MarcTec's infringement claims were objectively baseless"); Eon-Net LP v. Flagstar Bancorp, 653 F.3d 1314, 1326 (Fed. Cir. 2011) ("because the

written description clearly refutes Eon-Net's claim construction, the district court did not clearly err in finding that EonNet pursued objectively baseless infringement claims"); Raylon, LLC v. Complus Data Innovations, Inc., 700 F.3d 1361, 1369 (Fed. Cir. 2012) (finding infringement contentions frivolous because proposed claim construction "is contrary to all the intrinsic evidence and does not conform to the standard canons of claim construction"); and Taurus IP, LLC v. DaimlerChrysler Corp., 726 F.3d 1306, 1327 (Fed. Cir. 2013) (finding infringement claims to be objectively baseless where "the written description provides no support for Taurus's unreasonably broad construction.")  In the instant case, the intrinsic evidence provides no support for Roxane's proposed construction and, hence, its infringement claim.

This Court concludes that, as to Roxane's infringement claim, this case stands out from others as exceptionally meritless.  Roxane pursued an infringement claim for which it lacked any legal or factual support.  Roxane has been unable to point to any colorable factual or legal support for its position.  It is indeed an exceptional case.  It stands out from other cases by virtue of these facts:

1. The claim at issue required a capsule size of "size 00 or less."

2. The accused infringer used a size 00el capsule, which is larger than a size 00 capsule.

3. No intrinsic evidence even colorably suggested that the inventors understood "size 00 or less" to include a capsule of a larger size.

4. The patent cites as a reference the Torpac capsule size chart, which states exact measurements for a size 00 capsule, but does not show any size 00el capsule.  Although this reference was cited by the examiner, the record contains no evidence that the inventors opposed its inclusion or disagreed with its contents on this point – even though they made arguments to the examiner and to the PTAB about the Torpac reference in response to a rejection.  See, e.g., the PTAB Appeal Brief (ROX_CA00000233-247.)

5. Roxane's infringement case depended on its persuading this Court to accept its "size family" claim construction theory. No intrinsic evidence supported this theory.

6. Roxane's claim construction case depended on persuading the Court to look to the extrinsic evidence and credit its experts. Federal Circuit law bars a Court from basing a claim construction on extrinsic evidence except where the intrinsic evidence is ambiguous. Roxane has offered no evidence that the intrinsic evidence was arguably ambiguous, nor that there was another ground to base the construction on the extrinsic evidence.

This Court finds that this is an exceptional case, pursuant to 35 U.S.C. § 285, and it will grant the motion for attorney's fees. The Court needs additional briefing to determine the amount to be awarded. The supplemental declaration of Robert Silver states that Defendant seeks total fees and costs, as of January 30, 2017, of $2,101,077.05. Roxane shall file an opposition brief addressing the amount of the award by two weeks of the date of entry of this Opinion, and Defendants shall submit a reply brief two weeks after that.

For these reasons,

**IT IS** on this 12th day of April, 2017 hereby

**ORDERED** that Defendants' motion (Docket Entry No. 234) to declare this an exceptional case, pursuant to 35 U.S.C. § 285, is **GRANTED**, but the Court reserves decision on the amount of fees and costs to be awarded; and it is further

**ORDERED** that Roxane shall file an opposition brief addressing the amount of the award by two weeks of the date of entry of this Opinion, and Defendants shall submit a reply brief two weeks after that.

    s/ Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.